Good morning, Your Honors. Kirk Passage for the Los Angeles Lakers. May it please the Court with me today are Pamela Woods and Anna Mae Carmel. I acknowledge them because they're largely responsible for whatever was good in the briefs. Good work, ladies. Subject to questions, I think I'd like to reserve four minutes. In reviewing what the District Court decided here, it struck me that from our perspective, there were three fundamental errors the Court made. The first one really deals with the TCPA itself, and I'm not sure when we're dealing with an insurance policy interpretation issue how much relevance the legislative history has, because given the notion that you interpret an insurance policy from a layperson's perspective, I don't know that we would expect a layperson to go analyze legislative history. We don't need to do that here, do we? I mean, the Act is pretty clear that the Commissioner can make rules, quote, as necessary in the interest of privacy rights that the sections intended to protect. That's Section 227, which is what Emanuel sued under, right? That's correct, and what I would say is with respect to the District Court's decision, the portion of the TCPA that the District Court quoted is actually the wrong section. The District Court... Is that section I quoted wrong? No, what you're citing is a correct statement. The District Court, though, premised its analysis on the portion of the TCPA that deals with contacts with residential homes, and the section that Emanuel sued under is the one that deals with unauthorized auto calls to cell phones where you have to pay an additional price. Right, and he says throughout his complaint, at paragraph number one, he says that the Lakers negligently contacted the phone in violation of the TCPA, invading his privacy. Paragraph two, he says the TCPA was designed to protect the privacy of citizens like him. Paragraph 31, he says that the Lakers illegally contacted the plaintiff, causing him to incur cell phone charges, which he had previously paid, and thereby invading his privacy. Paragraph 38, he alleges that the maximum statutory damages in an individual action for violation of privacy are minimal. So it seems like he certainly sued under 227. It certainly seems like 227 deals with the invasion of privacy. It seems like the complaint, very simply put, dealt with his privacy rights, and it seems like the policy excludes coverage for claims based on arising from or the consequence of invasion of privacy. That all supports dismissal of the case, and we don't need to get in. I mean, why do we need to get into legislative history and all these other things when we can simply affirm the district court on the decision that he made, she made, I'm sorry. Well, Your I do disagree in a couple of respects. One is that the notion that the TCPA is only about invasion of privacy, and it's not. But just a minute to answer his question. He was reading from the complaint, and he was reading what you alleged, or what Emanuel alleged, and how he alleged it, and how he then related it to the CPA, which was all about invasion of privacy. Well, it's true that Emanuel did put those allegations in the complaint, but Emanuel also put allegations that were not related to invasion of privacy in the complaint. So for example, in paragraph 31 of the complaint, there's an express allegation, and it's in the excerpts of record at page 243. There's an express allegation in paragraph 31 that the class was damaged because it was caused, and I'm going to quote, to incur certain cellular telephone charges or reduce cellular telephone time for which plaintiff and the class members previously paid, and then it goes on, and invading the privacy of said plaintiff and the class members. Well, it seems as if, and I was going to read that, and invading the privacy, that what he was suggesting was that the conduct prior to that invaded the privacy. Well, I think there's two pieces to this though, Your Honor. Well, I think you're going to allege two, you're going to tell me that there are two, but if I read the words that you gave, it seems to me that Emanuel's complaint talks about invasion of privacy. He's not limiting, he's frankly seems to be putting us right on invasion of privacy. Why add that and, and invade the privacy? Because the TCPA clearly is motivated in substantial part by concerns over invasion of privacy, and we don't dispute that. Well, then what allegation, or what theory, or what tort is he alleging in the language you just put together? Well, he's still alleging a TCPA violation. But I'm just trying to suggest, even though a violation, what theory? Your Honor, I'm submitting that he was alleging two theories. One is invasion of privacy, and I don't think we have to address today the difference between seclusion privacy and some other form of privacy. I'm hoping you didn't. Yes, I prefer not to. What else did he, what did he allege then? He alleged two things. Whether you characterize this as a property interest or not, which some courts have done, he clearly has alleged that he incurred unnecessary expense in the charges for the receipt of the text, and that it consumed minutes. So are you suggesting he's alleging an action outside the TCPA? I am not. He... Okay, then if he's not alleging an action outside the TCPA, then it seems to me that you're really contradicting what you said to my colleague. You're really saying I got to look at the TCPA and determine whether there is, if you will, a cause of action in the TCPA that relates to other than privacy. But what I'm saying is, if you look at the legislative history, and there are some... He says we don't need, and I thought you agreed with him. We don't need to look at the legislative history. I'm not sure we do need to look at the legislative history, because if you simply look at the allegations of the complaint, and that's why we cited cases like Pension Trust, the Ninth Circuit decision, and Manzarek, and Ticketmaster, because those cases recognize that all it takes is a couple of words and a complaint, and there is... I understand that it takes a couple of words, and I understand, frankly, because I was often in your spot trying to get insurance companies to pay, or against you trying to keep my insurance company from paying all the time I was in private practice. But the bottom line is, if I'm going to allege an action, and I'm going to say that the insurance company should, upon reading that complaint, suggest there is an action, and it's all under the TCPA, and we're on invasion of privacy. I thought the whole thing said invasion of privacy. Now you're saying it says two different things. Then it seems to me that you've got to look at the TCPA and see if it ever imagined a complaint based on those words. And when reading the TCPA, we can either say, well, it might be an evasion of privacy, or it might be a nuisance. That's all there is in the TCPA. That is not all there is in the TCPA, Your Honor, because it clearly, this section that Emanuel sued under, clearly is driven by the concerns over cost shifting, of sending text, or auto calling. But why is that not nuisance? Well, I don't dispute that it's also a nuisance. Well, I know, I don't dispute that it's anything but. Well, tell me how I can, tell me how I differentiate. I mean, I am trying to suggest, okay, that the TCPA now has a cause of action to be pled, and I want to know what that cause of action is, in my boat, giving you every benefit of the doubt, saying you can dispute, you can divide that sentence that you talked about. I'm trying to find out what is there in the TCPA would take that outside the nuisance context. It's not a trespass. The TCPA doesn't deal with trespass. It doesn't deal with trespass, I agree with that. And not only that, but you pled in your complaint that there would be no personal action pled. Well, there is no claim for personal injury alleged, whether you use it in the normal sense, or use it in the insurance sense. They disclaim that in the complaint. Our point is the TCPA recognizes three concerns. There's no claim entitled invasion of privacy. I don't think that's determinative, because I don't think titles control. There's no claim for nuisance. There's no claim for stealing property or for getting unfair economic revenge. But there is no complaint for wanting economic damage. That's not the case, Your Honor. This complaint is one seeking economic damage. Well, I know, but you're going to get economic damage for all of these actions. Economic damage is the harm you suffer. That's, it's not the theory. There is no cause of action for, called economic harm. I agree with that, Your Honor. In the theory disalleged, and for example, paragraph 5, there's the direct quote out of the Seventh Circuit decision in Sappett, and that quote deals with automated calls to cell phones adding expense. And I would submit, if you look at the Eighth Circuit... But isn't that a I mean, I guess where we're having a difficult time, and I share Judge Smith's concern, is what do we call this animal if it produced damage? You've told us what the damage is. It's I had to pay for cell phone text messaging or minutes that I didn't agree to pay for. But to me, that sounds like nuisance. Well, let's assume for a moment it is nuisance, which I do think is one of the underlying concerns in the TCPA. This is not a nuisance exclusion. I understand that, but I'm not sure it's adequately pled. Well, I don't know what Dave pled, Emanuel pled. Oh, I know what Emanuel pled. Yes. And what I'm suggesting is, if you're going to go on a nuisance theory, Emanuel didn't plead it. If you're going to go on a invasion of privacy, he certainly pled that, and that would get the insurance company out. So I'm trying to say, if you really want to go on a nuisance theory, where did he plead it, and what makes it such that his pleading was appropriate? Well, he pled, he did use the words invasion of privacy. Several times. Absolutely, and we don't dispute that invasion of privacy was part of what Emanuel was claiming. We're simply saying it wasn't the only thing. But if it wasn't invasion of privacy, then what was it? It's a TCPA violation. You're begging the question with that answer. You've got to come up with something more than economic harm here. You've got to come up with a theory of liability. The theory of liability is the interference with property use, and that is recognized and discussed in some of the cases we cited, where it's an injury to a right and property. In this case, it's intangible property, but there's no requirement in the policy that it be the use of toner, ink, and fax paper that comes up in those cases as an interference with tangible property. But he's got a property right and a plan he paid for that's affected by them. So he's suffering, and that's one of the things in the TCPA. Do you think that's adequately pled in his complaint? For purposes of the duty... I mean, what we're talking about is a duty to defend that the insurance company should read that complaint, and that it would be within their realm of possibility to suggest that that was something they should defend. Yes. Under a TCPA action, which the cases suggest is not have anything to do with that, except there's a couple that say it has to do with nuisance. So then they would go through and read his complaint and see if he's adequately pled nuisance, or if he was even close to pleading, or if he even thought about pleading, and they said he didn't. And then where we are, that's what we're arguing about. Because... They were wrong, or were they right? They were wrong. I know, that's your argument. Well, they have expressed allegations in paragraphs 5 and 31 that deal with the whole point of the subsection of manual suit under, which is the cost shifting feature. So then let's change. If in fact it's that close, and if in fact I've got to make those kind of determinations, how can there be bad faith in this case? Well... Because Feldman says, because the key to a bad faith claim is whether the denial of the claim was reasonable, a bad faith claim should be dismissed on summary judgment if the defendant demonstrates there's a genuine dispute as to coverage. And it seems to me we got a genuine dispute if I agree with you. Well, if we're talking summary judgment, and this was the record, I would agree with you. But we're not talking summary judgment. We've had no opportunity to get to the claims files and see what they were really thinking when it comes to bad faith. But I would note, and going back to one of your earlier questions, I think universal underwriters, the Eighth Circuit decision that we discussed, addresses the question that you have raised, because it says that the harms from cost shifting, and this is a direct quote, represent compensable harms encompassed by a liquidated sum within the fixed amount of damages available under the TCPA. That's the basis for the damage claim. It's the cost shifting here. We don't have a residential telephone line involved. We have texting. We have cost shifting. That's the basis for the damage claim here. And that's what we're saying. Do you want to save... I'll save my 46 seconds. Go ahead. Frankly, frankly, Counselor, I really appreciate your answering the questions straightly and directly, because this is a tough issue and I wanted to place them to you and thank you. Before you sit down, I freely admit I'm no insurance expert, but based on everything you've said in your dialogue with the court, it seems arguable that the complaint alleges an invasion of privacy claim, and let's assume we can find that. The terms of the policy quite clearly say that claims based on arising from or in consequence of invasion of privacy are excluded. Now, if there's a blend of claims in the complaint, how does that work? I mean, doesn't the, to use Judge Smith's terms, doesn't the insurance company still get out of the duty to defend that? Or do they just defend the portion of the complaint that alleges the non-invasion of privacy claims? Or how does that work? They don't get out of their duty to defend under cases like Horace Mann, even if the predominant aspect of the lawsuit is not covered, they must defend and defend it entirely. Under the California Supreme Court decision in State Farm v. Partridge, the fact that an exclusion may apply to a lot doesn't excuse the insurer from defending the lawsuit in a whole. And that's why we have said that this exclusion isn't clear on its face. I'm not going to repeat anything, and I do note, Your Honor, that I'm well past my time, so. I will give you until the time of my rebuttal, Mr. Passman. Did you want to follow up? No, I just, I just, I just, I just want to confirm what I think you just said, which is that if you're able to get over the hurdle of showing that any portion of Emanuel's complaint alleged anything beyond invasion of privacy, then we have to reverse. That is our position, Your Honor, and it goes back to the California Supreme Court decision in Gray about 50 years ago, the third party plaintiff cannot be the arbiter of coverage. Okay. Good morning. May it please the Court, Robert Traylor on behalf of Federal Insurance Company. I'll submit that this should be a straightforward application of a complaint that expressly, as the Court has already recognized, pleads in four separate places, an invasion of privacy, as will apply to a policy that is for invasion of privacy, and does so not only on its face, but with the broad language of excluding any claim for invasion of privacy or anything else based upon, in consequence from, or arising from a claim for privacy or invasion of privacy. That's all that needs to be done, and the District Court did that analysis correctly. Mr. Emanuel pled only a TCPA violation, in two parts, a willful and a negligent violation of the TCPA, nothing more. There's been some reference to the word nuisance here. The only reference to nuisance in the Emanuel complaint is at paragraphs three and four in the introduction section of the statute. There is no nuisance claim here. However, how do you answer counsel's question as to the, if you will, paragraph 31? I think one answer to that is what we've heard already here today in the questioning, which is that damages do not sit unconnected to anything. They don't sit in the abstract. They must be tethered to a legally cognizable right. And that is a TCPA claim. And a TCPA claim has been recognized from no less than the United States Supreme Court, to the Ninth Circuit decision in Satterfield, to a multitude of federal appellate court cases, to state court cases, as involving, as being, inherently being, as the District Court put it, a conceptual wellspring is a invasion of right of privacy. So I think that answers the question, that the mere search for a economic harm, the use of minutes, is not sufficient to get over the fact that the TCPA is. In fact, if you look at paragraph five, I'm sorry. Oh, I was going to say, how do you distinguish, I think it was Judge Easterbrook's Seventh Circuit opinion, where he recognized both privacy tort, but also economic harm that would not be invasion of privacy? I think if you look at paragraph five of the Emanuel complaint, he cites Judge Easterbrook's decision. Right. And he says that the, it adds, expense adds to the annoyance. So it's additive. It's not separated apart, it's additive. It's based on what Congress was trying to protect. I mean, the purpose of the TCPA is absolutely crystal clear. If you look at the purpose of the act in the legislative histories, and it's at ER 60 and 78, both of those were expressly designed to protect privacy. So the economic harm was additive to that. Let me give you my hypothetical. I am a business, and my fax machine is buried in junk faxes. A business doesn't have personal privacy rights like a person does. So isn't that economic injury that is suffered from a violation of the statute that produces economic harm? And why isn't that a viable cause of action for my hypothetical company? Because a part of the TCPA is the Junk Fax Protection Act, which was separately enacted subsequent to the original enactment of the TCPA, to protect in that case for different harms, i.e. ink, paper, taking a space, taking a time, other faxes couldn't come through. Okay. Well, Mr. Pasich says that the same issue is present here with the fax to say that Judge Tallman's business phone, which may be a cell phone, whatever the case may be, is overwhelmed by advertising and those types of things. A corporation does not have an individual right to assert an individual, or an invasion of privacy claim isn't, as he say, an in the circumstance that would be present there and here. Well, I think we now are into the world of hypotheticals because what we're addressing is a claim under the TCPA. This is not a state law claim for an invasion, a trespass claim, or a state law nuisance claim. In fact, the United States Supreme Court said that the TCPA does not encompass state substantive law. But you understand my question, and I think, I don't want to speak for my question is, is a corporation out of luck anytime someone asserts a TCPA claim that brings invasion of privacy, given the fact that they don't have any right, individual right, for that claim as a corporation. To the extent the corporation asserted only a TCPA claim, and because that claim is a right of privacy claim, I think they are out of luck. They have additional harms. Companies could never, could never get insurance companies to defend them on TCPA claims. That's where I think the hypothetical gets stretched because that doesn't mean a corporation can't bring an additional cause of action under some other substantive right for that damage. That was just not pled here, nor was it reasonably, did it reasonably apprise the insurance company that something like that would be happening. But wouldn't the theory be, as Mr. Patchett suggested, the loss of intangible property? Let's say your fax machine is tied up because of all these junk faxes, so you can't get legitimate work-related faxes in. Wouldn't that be the loss? I understand that you could have a loss, and I'm not disputing that that could be a loss in that situation. But why wouldn't that violate the statute, I guess, is what I'm asking. Because the statute is a statute that is designed to protect privacy. In of itself... But I thought you acknowledged that the company could bring, although I guess your position is that's a different section of the statute that specifically addresses junk fax. It's either a different section of the statute, the Junk Fax Protection Act, or a possibly an entirely different claim under, say, state law or some federal law of which I'm not aware right here. But simply, the issue here is, did this complaint do that? And my argument would be that it is impossible to read this complaint as doing anything close to that. Well, my worry, and that's why we got to the point, I guess, with your opposition counsel, Mr. Passage, when you look at paragraph 31, plaintiff suffers a reduction of cellular telephone time for which he and the class members previously paid, whether that really goes to a TCPA claim that is based in privacy, or whether there's some other allegation therein which would be covered by the TCPA which is not privacy. And I know there's and language there, and then they talk about privacy, which seems to me to indicate they were always talking about privacy. But he's arguing, no judge, look very carefully at what they pled, and that's not privacy. Privacy is the additional thing that would also be a privacy action. How do you respond to that? Because I tried to ask him questions about that. Now, how would you respond? Because the invasion of the property right harm does not stand alone and there's a great deal of legislative history, it's in the record, and again, if you just look at the purpose of the bill sections on both the Senate and the House reports, it talks about protecting privacy rights. So I don't think you can parse out one little additive harm and ignore what really the bill was directed at. Do you believe that this is adequate to plead a nuisance claim? I do not think it is adequate to plead a nuisance claim. One, we know from the Supreme Court that the TCPA does not include state substantive law. Two, the word nuisance, if we're looking in the complaint here as it's used, which is a citation to legislative history, we would look to the common and ordinary meaning of the word nuisance. Not a legal harm, but a common and ordinary meaning, which means annoyance. And we have words like unwanted or intrusive, things like that, which are all words that I think are highly common with privacy violations. Is it so that Emanuel was not deprived from the use of his phone with this text? I would assume from his fair reading of his complaint that a call came in and it used some portion of his phone, so yes. Well, but I mean, can't you get texts at the same time you're using your cell phone? At least I can now. I don't know if Mr. Emanuel could at the time. I can only look at the complaint, and I think it's really important. I can't answer the hypothetical, but I think it's really important that we look at a duty to defend. What does the complaint say? And what can be reasonably inferred for the complaint? And that, I think, is what this insurance company did. They said this is a, we have privacy violations written all over this. It's purely for TCPA. So I don't, I can't speculate what it means. I can only say what an insurance company should do and did properly here. And if there are no further questions, I will rest. I don't have any more, Judge Murphy. And I thank counsel. I know you have some more time, but I still thank you both for answering our questions directly. Thank you, Your Honor. I very much appreciate it. I'll be very brief with my 45 seconds or whatever it is. I'll give you a couple minutes. Most lawyers can't do it in 45 seconds, so I won't make you try. Well, I think when we looked at the complaint, I mean, our primary tenant, other than that the exclusion doesn't do what it should do, and I'm not going to repeat that. Paragraphs 3, 4, 5, and 31 of the complaint, I think are clear that this just isn't about only invasion of privacy. And Paragraph 32 expressly disclaims any claim for personal injury. That would be a privacy claim that's being disclaimed by the plaintiffs. Now, if you look at Horace Mann and you look at Montrose, and more importantly you look at the Ninth Circuit decision, this Court's decision in the Manzarek case, it's exemplary of how you interpret the duty to defend in this context. In Manzarek, as the decision makes clear, that complaint had something like 80 paragraphs in it, and there was one sentence in the complaint, one sentence, that said that John Dinsmore, then the door's drummer, felt like he'd been demeaned by his replacement, by the police's drummer, and that the Ninth Circuit concluded that you could infer from that the possibility of emotional distress, and therefore that was enough to trigger the defense duty for the entire lawsuit. We've got a lot more in the way of allegations here that go to economic damage and interference with intangible property rights, and that is what I think is determinative. Thank you. All right. Unless anybody has any further questions, thank you both. The case just argued is submitted. We'll puzzle through it and get you an answer as soon as we can.
judges: Tallman, N.R. Smith, Murphy